Case 3:99-cv-00809-R   Document 32   Filed 07/08/03   Page 1 of 31   PageID 43
United States Court of Appeals
Fifth Circuit

F I L E D

July 1, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-11201

JACKIE BARRON WILSON,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(3:99-CV-809) — R

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    After federal habeas relief was denied Texas state prisoner
Jackie Barron Wilson, concerning a Texas capital murder conviction
for which he received a death sentence, the district court declined
to grant him a Certificate of Appealability (COA). *See* 28 U.S.C.
§ 2253(c). Accordingly, Wilson seeks a COA from this court, asking
that we certify five issues for appeal:  (1) whether the district
court erred in not conducting an evidentiary hearing to determine

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

whether agreed-prospective-juror excusals, pursuant to Texas law, violated the Equal Protection Clause of the Fourteenth Amendment and (2) whether such agreed conduct violated that clause; (3) whether the evidence was legally sufficient to show specific intent to cause death; and (4) at trial and (5) on appeal, whether Wilson received ineffective assistance of counsel. Each COA request is **DENIED**.

I.

Early on the morning of 30 November 1988, the body of a five-year-old girl was found in a remote area. She had been kidnapped from her bedroom earlier that morning; sexually assaulted (including anally-raped and some form of vaginal penetration); asphyxiated (smothered or strangled); and run over by an automobile.

Around 8:00 a.m. that day, the victim's mother discovered her daughter was missing. The window above the child's bed was raised and the glass pane broken.

The medical examiner determined that the cause of death could be attributed to: a major crush-force injury to the head, caused by the tire of an automobile running over it; and asphyxiation from smothering or strangulation. Either was sufficient to cause her death. Bruising indicated the victim was still alive both when sexually-assaulted and when run over by the vehicle.

Wilson knew the victim. He had recently lived in the apartment complex (the apartments) where the victim lived with her mother, brother, and live-in babysitter. Wilson was an acquaintance of both the mother and the babysitter. (Wilson was not living at the apartments at the time of the murder.)

On 29 November, the evening prior to the victim's death, Wilson consumed alcohol, marijuana, and cocaine. Later that evening, Wilson was seen driving an automobile in the direction of, and was placed at, the apartments, including in one of them, after midnight (early morning of 30 November; the victim was found later that morning).

Wilson's fingerprints were found on both sides of pieces of glass from the victim's broken bedroom window. Tire tracks on the victim's body matched two distinct types of tires that were on the automobile Wilson admitted to driving the night before, and early morning of, the murder. Hair found on the undercarriage of the vehicle and inside it had the same characteristics as the victim's hair, and carpet fibers from underneath the automobile matched those from the carpet inside it. Wilson, a Hispanic male, could not be excluded as the contributor of DNA found on the victim (one in 2083 Hispanic males shared characteristics of DNA found on anal swab). A chest or pubic hair recovered from the victim's genital area was determined to be Mongoloid, a racial group that includes Hispanics.

Wilson was convicted on 27 September 1989 of murder in the course of a kidnapping, a capital offense under Texas Penal Code § 19.03(a)(2); he was sentenced to death. The Texas Court of Criminal Appeals reversed the conviction and remanded the case for a new trial. *Wilson v. State*, 863 S.W.2d 59 (Tex. Crim. App. 1993) (State's challenge-for-cause of venire member constituted reversible error).

At the remand trial in 1994, Wilson was again convicted and sentenced to death. The Court of Criminal Appeals affirmed. *Wilson v. State*, No. 71,947 (Tex. Crim. App. 13 Feb.), *cert. denied*, 522 U.S. 829 (1997).

Wilson filed a state habeas application in June 1997. The next February, finding no controverted, previously unresolved facts, the convicting court entered an order, *inter alia*, denying Wilson an evidentiary hearing; that September (1998), it adopted the State's proposed findings of fact and conclusions of law in their entirety. The Court of Criminal Appeals, adopting the convicting court's recommended findings and conclusions, denied relief. *Ex Parte Wilson*, No. 40,438-01 (Tex. Crim. App. 31 Mar. 1999).

Wilson filed for 28 U.S.C. § 2254 federal habeas relief in January 2000. Following the State's moving for summary judgment, the matter was referred to a magistrate judge, who submitted an extremely comprehensive report, with a recommended denial of habeas

relief. *Wilson v. Cockrell*, No. 3:99-CV-809, Findings, Conclusions, and Recommendation of the Magistrate Judge (N.D. Tex. 31 July 2002) (Magistrate Judge's Report). The district court adopted that report and denied relief. *Wilson v. Cockrell*, No. 3:99-CV-809, Order Adopting Findings, Conclusions, and Recommendation of U.S. Magistrate Judge (N.D. Tex. 25 Sept. 2002).

In December 2002, the district court denied Wilson's COA request.

## II.

Wilson seeks review of the denial of habeas relief. As required by the Antiterrorism and Effective Death Penalty Act (AEDPA), he first seeks the requisite COA; without a COA, we lack jurisdiction over the appeal. 28 U.S.C. § 2253(c)(1)(A).

In determining whether a COA should issue, we must decide whether Wilson "has made a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). This "includes [his] showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner [by the district court] or that the issues presented were adequate to deserve encouragement to proceed further". *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(internal quotations and citations omitted).

A COA determination "requires an overview of the claims in the [federal] habeas petition and a general assessment of their

5

merits"; again, in this regard, we must "look to the District Court's application of AEDPA and ask whether that resolution was debatable amongst jurists of reason". *Miller-El v. Cockrell*, 537 U.S. 322, ___, 123 S. Ct. 1029, ___, 154 L. Ed. 2d 931, 950 (2003). This threshold inquiry "does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, [AEDPA] forbids it". *Id*.

Accordingly, to obtain a COA, Wilson need not show that his appeal will succeed. *Id*. On the other hand, there is no requirement that a COA must always issue. *Id*. "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part". *Id*. (internal quotations and citation omitted).

A.

Wilson requests a COA for each of two issues involving agreed prospective-juror excusals pursuant to TEX. CODE CRIM. PROC. § 35.05: (1) whether the district court erred by not holding an evidentiary hearing before ruling on the issue; and (2) whether the agreed excusals violated the Equal Protection Clause.

Regarding the factual basis for these claims, Wilson alleges: the venire consisted of approximately 840 persons; of these prospective jurors, 166 listed themselves as black and 40, Hispanic, on the questionnaires; the State and defense agreed to excuse more than 600 venire members prior to questioning, pursuant

6

to their answers to those questionnaires; and, after the agreed excusals, only two black and three Hispanic venire members remained. (The questionnaires are not part of the record. Instead, Wilson has submitted two affidavits from law students who examined them.)

Of the black and Hispanic potential jurors who remained after the excusals, none served on the jury. Two of those three remaining Hispanic venire members were challenged for cause *by the defense*, with *Wilson agreeing* on the record to one of the dismissals. Over Wilson's objection, the third, and final, Hispanic venire member was dismissed, based on a challenge for cause by the State, because she could neither read nor write English. Both remaining black venire members were peremptorily challenged by the State.

At one point during voir dire, Wilson protested in open court:

> [W]e can't get no [sic] Hispanics up there.
> They keep excusing all Hispanics. All blacks,
> all whites. Anything the State goes with,
> they start being real lenient on the jury. My
> attorney seems to follow right along with
> them. What the hell am I sitting here for? I
> know I'm going to get railroaded again just
> like I did the first time, so what the hell am
> I sitting here for, then?

Wilson claims an equal protection violation because of the agreement to exclude almost all Hispanic and black venire members. He also contends that no court has fully adjudicated this claim, because no evidentiary hearing has been held.

7

In his state habeas petition, Wilson first raised an equal protection claim based on the excusals; he contended the agreement to excuse violated his equal protection rights under *Mata v. Johnson*, 99 F.3d 1261 (5th Cir. 1996), *vacated on other grounds*, 105 F.3d 209 (5th Cir. 1997) (equal protection violation where all black venire members excused by agreement). He did not contend that the excusals violated *Batson v. Kentucky*, 476 U.S. 79 (1986) (peremptory challenges based on race violate equal protection); on the other hand, he did contend he had shown a *prima facie* case of race discrimination, as is required under the *Batson* framework.

For the state habeas proceeding, the State presented affidavits from the trial judge, three district attorneys, and defense counsel, who were involved in the jury selection; they offered race-neutral reasons for excusing venire members in this fashion. The affidavits explained:  the prosecution and defense would participate in "trading conferences" in which the parties would, after reviewing the juror questionnaires, decide which potential jurors to excuse by agreement; the conferences were held in an effort to conduct "an efficient voir dire"; the discussions regarding which potential jurors to excuse "centered strictly on [their] answers to the various questions on the questionnaire and not on [their] race"; the parties generally would "trade", or agree to excuse, on the basis of answers to the death penalty question; specifically, potential jurors who answered "1" (appropriate in all

murder cases) were excused along with jurors who answered "4" or "5" (reluctance or unwillingness to impose) and "6" (none of above); this was common practice, because it was thought these potential jurors would not survive challenges for cause; and potential jurors who answered the death penalty question "2" or "3" were also traded if their answers to other questions disqualified them.

Without conducting an evidentiary hearing, the court of conviction (but not the trial judge) rejected Wilson's *Mata* claim; as stated, the Court of Criminal Appeals adopted that court's findings and conclusions. It found: the affidavits described above were believable and credible; and the agreed excusals were based on either responses to the general death penalty question or answers to various other questions. It determined Wilson "failed to present any credible evidence of an explicit or even an implicit agreement" between the prosecutor, the defense counsel, and the judge to exclude potential jurors based on race or any evidence that the parties engaged in purposeful discrimination or collusion. It also determined: Wilson failed to prove he had not consented to his attorneys' actions or the agreed excusals; he did not timely object to the claimed exclusions; and, therefore, he invited any error.

Regarding a possible *Batson* claim, the Court of Criminal Appeals determined the claim was not properly preserved and thus was not cognizable on habeas review. Regardless, it found Wilson

9

had failed to prove any potential jurors were improperly excused based on race and concluded, as a matter of law, that Wilson had failed to establish a *prima facie* case of discrimination.

As noted, the district court adopted the magistrate judge's report. It assumed, without deciding, that Wilson had standing to raise the *Mata* claim on behalf of the potential jurors; it also assumed his earlier-quoted protest during voir dire preserved that claim. On the merits, it distinguished *Mata*: "unlike *Mata*, [Wilson] has presented no evidence that there was an agreement between the parties ... to excuse potential jurors *on the basis of their race*". *See* Magistrate Judge's Report at 10-11 (emphasis in original). It found the agreed excusals also resulted in the omission of a large number of non-minorities from the venire, and "[w]ithout more than a showing that the agreed excusals had an impact on the racial make-up of the jury, [Wilson] has not established an Equal Protection claim under *Mata*". *See id.* at 11.

As noted, the district court also reviewed the claim under *Batson*. "Giv[ing Wilson] the benefit of the doubt", it "assumed", without deciding, that he had preserved the *Batson* claim through his above-quoted protest and determined the statistical data was sufficient to establish a *prima facie* case of purposeful discrimination. *See id.* at 12. It held, however, that, through the earlier-described affidavits presented for the state habeas proceeding, the State "met its burden of producing evidence that

10

the agreed excusals were made for reasons other than race". *See id*
at 12-13.   It noted that the trial record supported these reasons
and demonstrated lack of collusion:  *e.g.*, defense counsel objected
to the State's challenge-for-cause of a prospective Hispanic juror
on *Batson* grounds; and the State accepted a Hispanic juror to serve
on the jury who was ultimately successfully challenged by the
defense.  *See id*. at 13.

For these reasons, the district court concluded that the state
court's determination "that [Wilson] had failed to establish an
equal protection violation under either *Mata* or *Batson*" was not "an
unreasonable application of, nor contrary to, federal law".  *See
id*.

### 1.

Wilson first requests a COA for whether the district court was
required to conduct an evidentiary hearing on the agreed-excusals
issue.  Wilson requested, but did not receive, such a hearing in
district court.  (As noted, Wilson had also requested, but failed
to receive, one in state court.)

The district court found Wilson did not fail to develop his
factual claim in state court and was thus eligible for an
evidentiary hearing.  *See* 28 U.S.C. § 2254 (e)(2) (if petitioner
failed to develop facts in state court, no evidentiary hearing
except under certain circumstances).  Nevertheless, it noted that,
to obtain a hearing, a habeas petitioner has to show either a

11

factual dispute which, if resolved in his favor, would entitle him to relief or a factual dispute that would require development in order to assess the claim. *See* Magistrate Judge's Report at 14-15 (citing *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir.), *cert. denied,* 531 U.S. 957 (2000); *Robison v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999)).

The district court determined Wilson was not entitled to a hearing. He "ha[d] not alleged any factual dispute with regard to this claim" and "failed to even allege, much less present evidence, that the statements made in the affidavits submitted by the parties in the case are incorrect or not worthy of belief". *See id*. at 15.

Section 2254 (e)(2) allows habeas evidentiary hearings in certain instances; it does not require them. The denial of an evidentiary hearing is reviewed only for an abuse of discretion. *E.g.*, *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000); *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998) (whether hearing required committed to district court's discretion).

Assuming the district court could have granted an evidentiary hearing pursuant to § 2254 (e)(2), the question for COA purposes is whether reasonable jurists could find that the district court abused its discretion in declining to grant one. Because Wilson did not allege that the affidavits were incorrect and no factual

issues were before the district court, reasonable jurists would not debate this issue.

2.

Concerning the agreed excusals, Wilson next requests a COA for the claimed equal protection violation. He contends the Court of Criminal Appeals was unreasonable in its application of federal law because it held, contrary to the subsequent holding of the federal district court, that Wilson did not state a *prima facie* case of discrimination for the excusals.

Wilson has not shown, however, that jurists of reason would debate the *ultimate conclusion* of both the state habeas court and the federal district court: that the excusals were not based on race in violation of either **Mata** or **Batson**. Jurists of reason would not disagree with the district court's conclusion that, in this regard, the state courts reasonably applied federal law.

B.

Wilson next requests a COA for whether the evidence was legally sufficient to show specific intent to cause death; such intent must be proved beyond a reasonable doubt for a capital murder conviction.

The evidence at trial demonstrated, *inter alia*: the victim was kidnapped from her bedroom and viciously raped; the victim knew (and could identify) Wilson, because he had lived in the apartments, was an acquaintance of the victim's mother and

13

babysitter, and at a birthday party earlier that year, had touched the victim's hair and spoken to her (causing her to jerk away); the cause of death was both asphyxiation and a major crush force injury to the head, caused by an automobile tire running over it; the victim was found in a remote, secluded area; the asphyxiation and major crush force injury were "fairly close together in time"; the body was directly in front of the vehicle prior to being run over; the rear tires of the vehicle left an acceleration mark approximately 29 feet from a pool of blood (where the victim's head was located), in a direct line with the victim's body; and the police believed that, from this distance, the driver would have had ample time to avoid an object.

Wilson contends the evidence was not legally sufficient to prove his intent to kill the victim because, given the evidence, any number of other scenarios are equally plausible. He notes that the State was unable to prove the exact circumstances surrounding the death and suggests he may have smothered the victim with his hand in an effort to quiet her while he sexually assaulted her (but did not intend to kill her) and may have run over her with his automobile in an effort to leave the scene quickly (again, without intent to kill her).

Wilson first raised this claim on direct appeal. Applying *Jackson v. Virginia*, 443 U.S. 307 (1979) (establishing standard for sufficiency), the Court of Criminal Appeals, viewing the evidence

14

"in the [requisite] light most favorable to the verdict", had "no trouble concluding that any rational trier of fact could conclude beyond a reasonable doubt that [Wilson] intentionally caused the death of the victim either by strangulation or running over the victim with [an automobile]". *Wilson*, No. 71,947 at 1-2.

Wilson raised the same issue in his state habeas proceeding. The Court of Criminal Appeals determined, as a matter of law, that, because it had already considered and rejected this issue on direct appeal, Wilson was procedurally barred from raising it in his state habeas application. Nevertheless, it likewise determined, as a matter of law, that the evidence was legally sufficient on the issue of intent.

The district court noted that, "under the *Jackson* standard, a federal habeas court may find sufficient evidence to support a conviction even though the facts may also support another reasonable hypothesis consistent with a claim of innocence". *See* Magistrate Judge's Report at 16 (citing *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991), *cert. denied*, 506 U.S. 833 (1992)). It determined, under that standard:

> [A]ny rational jury could have found beyond a reasonable doubt that [Wilson], when he kidnapped a girl who knew him in the middle of the night from her home, anally raped her either before or after he took her to a remote location with little or no traffic, suffocated her so severely that the suffocation in and of itself was fatal, placed her in a grassy field several feet from the nearest road either

15

> before or after suffocating her, and ran her
> over with a car parked several feet from her
> body in such a manner that the vehicle left
> tire marks on both her shoulder and her leg
> and caused a fatal wound to her head, intended
> for her to die either by suffocation or by
> being hit by his car.

*Id*. at 17-18.  Observing that the Court of Criminal Appeals, on direct appeal, had held the evidence legally sufficient on intent to kill, the district court concluded this was not an unreasonable application of the *Jackson* standard.  *See id*. at 18.

Wilson contends the district court failed to address his contention that, when the circumstantial evidence is "ambiguous" with respect to the applicable culpable mental state, rather than in conflict (*i.e.*, where there is circumstantial evidence to support more than one inference), and the State presents no further circumstantial evidence that, if credited, would resolve the ambiguity, due process will not tolerate a capital conviction.  He contends the State failed in its burden of production on the issue of intent, as well as in its overall burden of proof.

Again, the State need not disprove every hypothesis, so long as it produces evidence that allows a reasonable jury to infer the elements of a crime beyond a reasonable doubt.  *See, e.g.*, *Gibson*, 947 F.2d at 783.  *Jackson* instructs that "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts

16

in favor of the prosecution, and must defer to that resolution". 443 U.S. at 326.

Wilson offers no legal theory or factual basis to support a distinction between "conflicting" and "ambiguous" evidence. Jurists of reason would not debate the district court's determination that the Court of Criminal Appeals reasonably applied *Jackson*. In other words, reasonable jurists would agree with the district court's determination that the Court of Criminal Appeals was reasonable in determining that the evidence, viewed in the light most favorable to the conviction, was sufficient to allow a reasonable juror to find, beyond a reasonable doubt, the requisite intent to kill.

### C.

Wilson's two final COA requests concern the effectiveness of his counsel both at trial and on appeal. Restated, he claims ineffective assistance at each stage. *See Strickland v. Washington*, 466 U.S. 668, 684-86 (1984) (to establish ineffective assistance, defendant must show deficient performance and resulting actual prejudice).

### 1.

Wilson's COA request for claimed ineffective assistance at trial centers on two failures to object (concerning the requisite intent for a capital murder conviction) that he insists collectively caused prejudice. First, trial counsel did not object

17

to portions of the prosecutor's closing argument urging the jury to convict Wilson of capital murder or nothing at all (rather than the lesser included offense of felony murder).  Second, trial counsel did not request that the instruction defining "intent" make clear that the jury could not find Wilson's objective was to cause death merely because it was his objective to engage in the conduct that did cause death.

a.

The jury was charged that it was authorized, should it find Wilson not guilty of capital murder, to convict him of the lesser included-offense of felony murder.  The prosecutor made the following remarks in rebuttal closing argument, *without objection*:

> You can stand up here all day long and you can downplay all this physical evidence that you want to, but I'll tell you one thing, [defense counsel] tells you he doesn't have the burden of proof and he's right about that. I have the burden of proof and I have the facts.  And I'll take my burden of proof and my facts any day.  And folks, if you cannot convict this man right here based on the evidence that you got in the courtroom, then when you leave don't you find him guilty of something lesser.  If you can't find this man guilty of specifically intending to kill that little girl, then you sign that not guilty form, and you let him walk out the door with you.
>
> And if you cannot convict this man for killing that little girl on the week and a half's worth of evidence you have had in this courtroom, then when you leave here and walk out with him, you go call your senator and your representative because the next time they meet down in Austin you tell them, we're not

18

convicting anybody anymore in Dallas County unless we have got a videotape of the offense, because it doesn't get any better than this, folks.

\* \* \*

You can turn your head to it and you can ignore it, but it's not going to go away. [Defense counsel] has told you over and over about that's your business if you want to believe this and that's your business if you want to believe that. Well folks, your business is this. You [sic] business is to see that Jackie Wilson stands in this courtroom and is held accountable and made to stand to answer for what he did to that little girl, for intending to kill her, intending to kidnap her and doing both of those things, with no more regard for her than an old sack of clothes.

When he was finished with her he threw her out on the side of the road, and your business is to see that he answers for it and that he pays for it. And if you just don't think that you can look at this man after all he's done – and that brings me to a point. I am not going to apologize to y'all for showing you the photographs, and I know it was hard on some people, but there's a lot of people here that have lived with those photographs and these facts for a long time. And I'm not going to apologize to you for having to see them. And I know that you will never forget it, and I don't want you to.

But if I had to stand up here and show you a thousand more of them I would do it if that [sic] what it's [sic] takes for this man to be punished for what he has done ... You can turn your back on it if you want to. But [defense counsel] said one thing, that someone that could do this and how they're not normal. You're right, he's not. And you better not forget it you [sic].

19

If you don't have the stomach for it, then you're making a bad, bad mistake. I'm going to tell you one more time and I mean this with everything in me. If you can't fined [sic] guilty of capital murder, if you even have to consider the second verdict form on that page, then you sign the last one and we'll let him go, because that's not the evidence here. He is guilty of capital murder and capital murder only and that's what I'm going to ask you to return.

Wilson contends his counsel was ineffective for failing to object because these comments invited the jury to ignore the law by asking them not to even consider the lesser-included offense of felony murder in their deliberations.

In denying relief on this issue on state habeas review, the Court of Criminal Appeals determined that pursuant to *Strickland*, failure to object did not constitute ineffective assistance.

Regarding deficient performance, it ruled counsel's failure to object was not deficient because the prosecutor was: (1) properly responding to defense counsel's assertion in closing argument that the jury had a choice between capital murder and felony murder and should choose the latter; (2) not telling the jury to ignore the law, but merely asserting that the evidence was so overwhelming that any guilty verdict other than capital murder could not be reasonably deduced from the evidence; and (3) urging law enforcement — that the punishment should fit the crime. It further recognized that, even if the statements were improper, the failure to object would not ordinarily reflect deficient performance,

because a decision whether to object during closing argument is a matter of trial strategy; and Wilson had not shown the decision not to object was not a matter of trial strategy.

Regarding prejudice, the Court of Criminal Appeals determined that Wilson was not harmed by the prosecutor's statements. First, the jury charge contained proper instructions, and the jury is presumed to have followed them. Second, the statements could have benefitted Wilson, because his counsel spent almost half of their closing argument urging the jury to find him not guilty.

The district court noted that, under Texas law, there are four areas of permissible jury argument: (1) summations of the evidence; (2) reasonable inferences or deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *See* Magistrate Judge's Report at 24 (citing *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)). It determined the prosecution's statements fell under (1), (3), and (4). *See id.* at 24-25. It acknowledged that whether to object during closing argument is a matter of trial strategy that a federal habeas court should not lightly second-guess. *See id.* at 25 (citing *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992), *cert. denied*, 509 U.S. 925 (1993)).

The district court agreed that Wilson had not suffered prejudice from the failure to object: the jurors were instructed

21

regarding the mental state required for both a capital murder
conviction and a felony murder conviction; and, as discussed *supra*,
that they had to find, beyond a reasonable doubt, intent to kill
the victim in order to convict Wilson of capital murder.  *See id*.
Accordingly, the district court concluded that the state habeas
court's application of *Strickland* was "not ... unreasonable".  *See*
*id*. at 26.  Reasonable jurists would not debate this conclusion.
In other words, they would agree with the district court that the
state court's application of both *Strickland* prongs was reasonable.

b.

As noted, Wilson maintains the instruction on the requisite
intent allowed the jury to convict for capital murder, even if
Wilson did not intend his conduct to result in death.  The jury
charge at the guilt phase included the following definition for
intent:

> A person acts intentionally, or with intent,
> with respect to the nature of his conduct or
> to a result of his conduct *when it is his*
> *conscious objective or desire to engage in the*
> *conduct or to cause the result*.

(Emphasis added.)  The application paragraph of the charge stated:

> To warrant a conviction ... *of capital murder*
> you must find from the evidence beyond a
> reasonable doubt ... the defendant caused the
> death of ... [the victim], by causing the
> asphyxiation of ... [the victim] ... or by a
> crush force injury to [her] caused by striking
> [her] with a motor vehicle *with the intention*
> *of thereby killing her*.  *Unless* you find from
> the evidence beyond a reasonable doubt that

22

> the defendant, on the said occasion
> *specifically intended to kill [the victim]*
> *when he asphyxiated her or struck her with a*
> *motor vehicle*, if he did, you *cannot* convict
> him of the offense of capital murder.

(Emphasis added.)

*Kinnamon v. State*, 791 S.W.2d 84 (Tex. Crim. App. 1990), held that a jury charge providing the full statutory definition of the culpable mental state for a result-oriented offense was not error when *a reading of the charge as a whole* showed the definition was properly limited. *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994), handed down approximately six weeks before Wilson's second trial began, overruled *Kinnamon* and held an intent instruction in a simple (*not capital*) murder case must be limited to the *result of conduct* (*i.e.*, it was error for a court to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense). 884 S.W.2d at 490.

A concurring opinion noted that the situation is more complicated *for capital murder*: every capital murder has a "result of conduct" element but also an aggravating feature that generally involves some other element of conduct, either "nature of conduct" or "circumstance surrounding conduct" or both. *Id*. at 493-94 (Maloney, J., concurring). It provided a sample definition section of a charge. *Id*. at 494. *Hughes v. State*, 897 S.W.2d 285 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1112 (1995), handed down

23

that same day, held, based on *Cook*, that it would be error in a capital murder case to include all conduct elements in the culpable mental state definition if not all applied.  897 S.W.2d at 295-96.

Wilson claims the given instruction was contrary to *Cook* and *Hughes* and created a danger that the jury would find he intended the result of his conduct simply because he intended to engage in the conduct that resulted in the victim's death.   Again, he maintains counsel was ineffective for failing to request a definition of "intentional" that made clear to the jury that it could not find his conscious objective or desire was to cause death merely because it was his conscious objective or desire to engage in the *conduct* that caused the death.

Regarding deficient performance *vel non*, the Court of Criminal Appeals concluded that *Cook* and *Hughes* were not binding law at the time of trial, because those opinions were not final until post-trial (petition for rehearing filed in *Cook*; *Hughes* based on *Cook*); and that, at best, the law on the issue was unsettled.  It further found that the offense of intentional murder during the course of kidnapping involves all three conduct elements (intentional murder is a result of conduct offense and kidnapping requires proof of awareness of nature of conduct and circumstances surrounding it).  Accordingly, it determined counsel's performance was not deficient for failing to request a more limited definition.

24

Regarding prejudice *vel non*, the Court of Criminal Appeals ruled that, concerning intent, the charge specifically stated the difference between "murder" and "capital murder". Thus, it concluded Wilson was not harmed by his counsel's failure to request a specific intent instruction.

The district court noted: both *Cook* and *Hughes* differentiated between murder and capital murder; *Cook* noted in *dicta* that, in a capital murder that involved more than one conduct element, it would not be error for the definition of intent to include more than the "result of conduct" definition; and, under Texas law, kidnapping (the underlying offense that elevated murder to capital murder) was a "nature of the conduct offense". *See* Magistrate Judge's Report at 27-28. It thus determined it was not error for the judge to have instructed on the definition of intent with respect to both *result* of conduct and *nature* of conduct. *See id*. at 28. It concluded that it was not deficient for counsel to not object, especially based on *dicta* from a concurrence (suggesting a better way to organize the charge). *See id*.

Regarding prejudice, the district court noted that a harmless error analysis was required by both *Cook* and *Hughes*. It concluded that Wilson failed to establish that, had counsel objected, there was a reasonable probability that the result would have been different — he had not established either that, if sustained, he would not have been convicted of capital murder, or that, if

rejected, the conviction would have been reversed on appeal. *See id*. Further, it recognized that, under the harm analysis, it was appropriate to consider to what extent the culpable mental states were limited by the above-quoted application paragraph contained in the instruction. After reading the application paragraph, the district court ruled it was clear that the jurors were instructed they could *not* convict Wilson of capital murder unless they found, beyond a reasonable doubt, that he had the specific intent to kill the victim. *See id*. at 29. Therefore, it ruled Wilson suffered no prejudice. *See id*.

Accordingly, the district court concluded that the state habeas court's application of *Strickland* was not unreasonable. Specifically, it found reasonable the state court's conclusions that: (1) there was no deficient performance in failure to object because the relevant case law was not then binding precedent; (2) there was no deficient performance because there was no error in the charge; and (3) there was no prejudice because the application paragraph correctly applied to the facts of the case the relevant law for the mental state required for capital murder. *See id*. at 30. Reasonable jurists would not debate the district court's conclusion that the state court's application of *Strickland* was reasonable.

2.

26

On direct appeal, the Court of Criminal Appeals held the trial court erred at the guilt phase by admitting evidence of Wilson's extraneous misconduct on the night of the offense. Specifically, it held erroneous the admission of the testimony of an adult resident of the apartments that Wilson broke into her apartment that night through a window, began to fondle her, and offered her drugs in exchange for sex. It held this admission was violative of Rule 404(b) of the former Texas Rules of Criminal Evidence. *Wilson*, No. 71, 947 at 33-37. Nevertheless, it concluded that other substantial evidence supported the conviction and held the error was harmless beyond a reasonable doubt under TEX. R. APP. P. 81(b)(2). *Id.*

Wilson's counsel did not seek rehearing following this appellate ruling. Wilson bases ineffective assistance of counsel on counsel's not doing so. (The State maintains Wilson had no constitutional right to the assistance of counsel for such rehearing request; we assume *arguendo* that he did.)

Wilson contends that, when conducting this harm analysis on direct appeal, the Court of Criminal Appeals mischaracterized the other evidence presented by the State and these mischaracterizations led to that court's conclusion that such other evidence was more substantial than it was. The claimed misstatements were: (1) Wilson gave a written confession — instead, he gave a written statement but did not confess to the

crime; (2) Wilson's blood and fingerprints were found inside and outside the victim's bedroom window — instead, the victim's blood was found in the bedroom along with Wilson's fingerprints on the inside and outside of the window; (3) there were two distinct sets of tires — instead, there were three tires of one type and one of another; (4) hair, blood, and tissue samples from the undercarriage of the vehicle were *matched* to the victim — instead, hair and hair pieces found were *consistent* with the victim's hair; and (5) the victim was strangled — instead, asphyxiation could have been due to either smothering or strangulation. *See id*. at 36-37. Therefore, Wilson claims: a properly conducted harm analysis may have yielded a determination that the extraneous misconduct error was *not* harmless (resulting in a new trial); and, accordingly, appellate counsel was ineffective by failing, through a request for rehearing, to bring these distortions to the attention of the appellate court.

On state habeas review, the Court of Criminal Appeals concluded that Wilson failed to establish a valid *Strickland* claim. It determined there was no deficient performance: Wilson received meaningful appellate review (appellate brief presenting 45 points of error, motion to supplement record, supplemental brief with additional points of error, and petition for writ of certiorari with the Supreme Court of the United States); appellate counsel submitted a credible affidavit stating that, although the harm

28

analysis did contain a few inaccuracies, he made a reasoned judgment that they were *not* significant enough to change the outcome of the appeal (especially because the Court of Criminal Appeals had heard the appeal twice and was familiar with the facts), so he focused instead on the certiorari petition; and the alleged mischaracterizations were reasonable deductions from the evidence, such that a motion for rehearing would have been an exercise in futility. The Court of Criminal Appeals also determined Wilson had suffered no prejudice because he had failed to show a different outcome would have resulted had appellate counsel requested rehearing.

The district court determined that the performance by Wilson's appellate counsel was not deficient and that Wilson did not suffer prejudice from the alleged omission. *See* Magistrate Judge's Report at 36-40. According to the district court, Wilson failed to show the strategy described in his counsel's affidavit was not reasonable. *See id.* at 36-37. In addition, he failed to establish a reasonable probability that the result would have differed had these inaccuracies been brought to the attention of the Court of Criminal Appeals by a rehearing request. *See id.* at 37. The district court noted that, even when the misstatements were corrected, overwhelming evidence of guilt remained. *See id.* at 37-39. Therefore, it concluded that the state habeas court's

application of both prongs of *Strickland* was reasonable.  *See id.* at 36.

Reasonable jurists would agree that the district court was correct in holding that the Court of Criminal Appeals' application of *Strickland* was reasonable.  In other words, they would not debate whether appellate counsel rendered deficient performance by not seeking rehearing, nor would they debate whether not seeking rehearing caused prejudice to Wilson.

III.

For the foregoing reasons, the COA requests are

*DENIED.*

A true copy
Test
Clerk, U.S. Court of Appeals, Fifth Circuit
By_____Deputy  7/1/03
New Orleans, Louisiana

30

*United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**CHARLES R. FULBRUGE III**
**CLERK**

**TEL. 504-310-7700**
**600 CAMP STREET**
**NEW ORLEANS, LA 70130**

July 1, 2003

Ms Karen S Mitchell, Clerk
Northern District of Texas, Dallas
United States District Court
1100 Commerce Street
Room 14A20
Dallas, TX 75242



No. 02-11201 Wilson v. Cockrell
USDC No. 3:99-CV-809 —R

Dear Ms Mitchell:

Enclosed is a certified copy of an opinion-order entered on
7/1/03. We have closed the case in this court.

We will forward the record on appeal at a later date.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
    Rhonda Flowers, Deputy Clerk

Enclosure
cc: Honorable Jerry L Buchmeyer
    Mr John Gary Hart
    Mr Robin Norris
    Ms Tomee Morgan Carden Crocker